**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

VERICOOL WORLD LLC,

     Plaintiff,

     v.

TEMPERPACK TECHNOLOGIES, INC. and
TEMPERPACK VIRGINIA, INC.,

     Defendants.

Civil Action No. 1:23-cv-01761-DJN-JFA

**AGREED ORDER REGARDING E-DISCOVERY**
**AND FORMAT OF DOCUMENT PRODUCTIONS**

Upon the stipulation of the parties, the Court **ORDERS** as follows:

1.     This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

2.     This Order may be modified in the Court's discretion or by stipulation, or upon a party's motion brought for good cause.

3.     General production requests under Federal Rules of Civil Procedure 34 and 45 shall be read to exclude any email (collectively "email"). To obtain email, parties must propound specific email production requests.

4.     Email production requests shall identify the custodian, search terms, and time frame to determine the scope of potentially relevant email which the producing party may in its discretion review then review for responsiveness to general production requests, relevance, and/or privilege prior to production. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

5.    Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, and the accused instrumentalities.  While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.  Nothing in this order shall relieve the parties of their other discovery obligations.  Email production shall not be considered "non-source code documents" which, per the Scheduling Order (Dkt. 54), shall be substantially produced not later than September 3, 2024.  For email production requests served by August 20, 2024, responsive email shall be substantially produced by October 1, 2024.

6.    Each requesting party shall limit its email production requests to a total of five (5) custodians per producing party for all such requests.  The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case.  Cost-shifting may be considered as part of any such request.

7.    Each requesting party shall limit its email production requests to a total of ten (10) search terms per custodian.  The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.  The Court encourages the parties to confer on a process to test the efficacy of the search terms, which shall be done as soon as possible after a party first serves email search terms.  If, after testing the efficacy of the search terms, the responding party contends the search terms are overly broad and/or unduly burdensome, the parties shall meet and confer to discuss appropriate narrowing of the search terms. A single search term resulting in more than 500 unique hits shall be presumed to be overly broad

2

and unduly burdensome.  If the parties are unable to reach agreement on appropriate narrowing, they shall submit any disputes in this regard to the Court for resolution.  The search terms shall be narrowly tailored to particular issues, rather than seek general discovery of a business or product.  Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.  Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

8.    Nothing in this Order prevents the parties from using technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

**PRODUCTION FORMATS**

9.    ESI shall be produced in the formats set forth in Attachment A.

**DOCUMENTS PROTECTED FROM DISCOVERY**

10.    These following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will not be searched, reviewed, or produced absent a showing of good cause:

a.    backup systems and/or tapes, such as those used for disaster recovery, maintained in a party's normal or allowed processes;

3

b. systems, server, and network logs;

c. raw or voluminous partner, customer or driver data that expires or is overwritten on a set schedule, or driver or customer data subject to privacy restrictions or regulations;

d. systems no longer in use that cannot be accessed;

e. voice messages, audio/visual or teleconference recordings;

f. text messages;

g. instant messaging and chat application data;

h. information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

i. automatically saved versions of documents and emails;[1]

j. deleted, slack, fragmented, or other data accessible only by forensics;

k. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

l. on-line access data such as temporary internet files, history, cache, cookies, and the like;

m. dynamic fields of databased or log files that are not retained in the usual course of business; and data in metadata fields that are frequently updated automatically, such as last opened dates.

---

[1] The parties will work collaboratively to establish protocols for the identification, collection, and production of electronic data with versioning information, emphasizing the use of the current version and ensuring that metadata is maintained throughout the e-discovery process.

**IT IS SO STIPULATED**, through Counsel of Record.

| VERICOOL WORLD LLC | TEMPERPACK TECHNOLOGIES, INC. AND TEMPERPACK VIRGINIA, INC. |
|---|---|
| By:/s/ *Ahmed J. Davis*   | By:/s/ *Robert A. Angel*   |
| Ahmed J. Davis (Va. Bar No. 43982)<br>adavis@fr.com<br>FISH & RICHARDSON P.C.<br>1000 Maine Avenue, S.W., Suite 1000<br>Washington, DC 20024<br>Tel: (202) 783-5070 \| Fax: (202) 783-2331 | Robert A. Angle<br>robert.angle@troutman.com<br>Christopher J. Forstner<br>christopher.forstner@troutman.com<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>1001 Haxall Point<br>Richmond, VA 23219<br>Tel: (804) 697-1200 \| Fax: (804) 698-5124 |
| Leeron G. Kalay (*pro hac vice*)<br>kalay@fr.com<br>Katherine D. Prescott (*pro hac vice*)<br>prescott@fr.com<br>Jessica H. Wang (*pro hac vice*)<br>jwang@fr.com<br>FISH & RICHARDSON P.C.<br>500 Arguello Street, Suite 400<br>Redwood City, CA 94063<br>Tel: (650) 839-5070 \| Fax: (650) 839-5071 | |
| Cheryl Wang (*pro hac vice*)<br>cwang@fr.com<br>FISH & RICHARDSON P.C.<br>12860 El Camino Real, Suite 400<br>San Diego, CA 92130<br>Tel: (858) 678-5070 \| Fax: (858) 678-5099 | |

**PURSUANT TO STIPULATION, IT IS SO ORDERED**.

Dated:_____, 2024

_____
Hon. John F. Anderson
United States Magistrate

**ATTACHMENT A**

**PRODUCTION FORMATS**

Electronically Stored Information (ESI) is to be produced in 300 DPI Group IV Black and White Tagged Image File Format (.TIFF or .TIF) files, with the exception of spreadsheet, presentation and database files as explained more fully below.  TIFF files shall be produced in single-page format along with image load files (.OPT file and .LFP file).

If a party's documents already exist in text-searchable format, or are converted to text searchable format, then such documents shall be produced in UTF-8 encoding.  With respect to documents containing redacted text, extracted text will be provided for the non-redacted text.  Text files and image load files should indicate page breaks, to the extent possible.

During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed and/or modified, metadata values should be extracted and produced in a load file ("metadata load file").

The metadata values that are to be extracted and produced in the metadata load files (.DAT file using concordance standard delimiters) are as follows:


**Metadata from Email:[2]**

    Email Subject

    Email Author

    Email Recipient

    Email CC

    Email BCC

    Email Received Date/Time: MM/DD/YYYY HH:MM:SS

    Email Sent Date/Time: MM/DD/YYYY HH:MM:SS

    Conversation Index

**Metadata from Non-Email ("Loose") ESI:**

    File Name

    File Author

---

[2] UTC time zone will be used for all data processed in this matter.

MIME Type field (e.g., Excel, Word, etc.)

File Created Date/Time: MM/DD/YYYY HH:MM:SS

File Modified Date/Time: MM/DD/YYYY HH:MM:SS

File Extension

**Additional Data for both Email and Loose ESI:**

Confidentiality

Custodian (if available)

To the extent reasonably available, the "Custodian" field with respect to ESI gathered from an individual's storage (e.g., hard drive, cloud allocation, mailbox) will provide coding sufficient to identify the individual custodian from whose storage such ESI has been gathered.

For any documents that contain an attachment (for example, email), to the extent available, the following fields should be produced as part of the load file objective coding fields to provide the parent/child or parent/sibling relationship:

Production Number Begin

Production Number End

Production Attachment Range Number Begin

Production Attachment Range Number End

Attachment Name

Production Doc Page Count

**De-Duplication**

The parties may de-duplicate identical ESI within a custodian's files or de-duplicate identical ESI across custodians at the point of data processing.  If de-duplication across custodians is employed, the producing party must provide information regarding which custodian's files de-duplicated out through an "all custodians" or "de-duped custodians" field, which may be provided at the conclusion of rolling productions.  De-duplication must be performed by a standardized automated machine comparison of the electronic documents, including MD5 Hash value comparisons of electronic documents.   For email, de-duplication should take place at the family-level only, that is, an email is an exact duplicate only if the entire family set of documents including each attachment to the parent email is duplicative of another email family including each attachment. The one exception to this email de-duplication rule is that lesser-included email threads need not be produced.  A lesser-included email thread is an email thread that is wholly contained in a longer email thread, as verified by an automated comparison.  Lesser-included email threads need not be

7

produced so long as the shorter thread does not contain an attachment which the longer thread does not contain and the shorter thread does not contain recipients that the longer thread does not contain.

## Production in Native Format

Unless such materials contain privileged information, spreadsheets (e.g., Microsoft Excel), presentation files (e.g., Microsoft PowerPoint) and database exports shall be produced in native format (read only) with a TIFF placeholder. The metadata load file shall contain a native link to the produced spreadsheet, presentation or database files. The native link values should contain the full directory path and file name of the spreadsheet, presentation or database file as contained in the produced media.

Production of responsive data contained in Microsoft Access or other types of relational databases should be achieved via a report or export of such data to Microsoft Excel spreadsheets, if feasible. If the database information cannot reasonably be read outside the database environment in either Excel or csv format, the parties agree to meet and confer as to a reasonable production format for that information.

To the extent such material contains information subject to a claim of privilege, they shall be produced in the form of a redacted .TIFF image or redacted native file. The parties agree to meet and confer about native redaction if redaction would render the document not reasonably usable.

A party that receives a document produced in TIFF format may make a reasonable request to receive the document in its native format, and such requests shall not be unreasonably denied.

## Bates Numbering

Bates number and any confidentiality designation should be electronically branded on each produced TIFF image of ESI but should not be included in the extracted text of ESI, unless producing text from a redacted production image.